IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**CHARLES H. TIGNER, IV,**

    **Plaintiff,**

v.                                                              CASE NO.: 2:21-CV-02475-MSN-tmp

**MEMPHIS POLICE DEPARTMENT
OF THE CITY, ET AL.,**

    **Defendants.**

---

**CITY OF MEMPHIS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS
PLAITIFF'S SECOND AMENDED COMPLAINT**

---

Defendant, City of Memphis, Tennessee ("City"), states that the Second Amended Complaint fails to state a claim upon which relief can be granted against it and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure the City hereby moves this court for an order dismissing the City as a party from this case.

    I.    **PLAINTIFF'S ALLEGATIONS AGAINST THE CITY**

Plaintiff's Complaint is a civil rights action [57-1, PageID 242] grounded in § 1983 and asserts that the City —and certain of its officers and/or employees— violated Mr. Tignor's rights secured by the Fourth to the United States Constitution. Plaintiff also alleges a violation of § 1981. [57-1, PageID 248]. In addition, Plaintiff sues the City under the Tennessee Governmental Tort Liability Act ("TGTLA"), the common law of Tennessee, and other applicable laws. [*Id.*]

Regarding his Civil Rights claims, Plaintiff pleads that the City has a duty to "properly hire, provide policy guidance, train, supervise, retain and discipline the members of the Memphis Police Department to ensure . . . the Memphis police Department [is] run in a lawful manner[.]"

[57-1, PageID 260] Plaintiff further alleges that "The City . . . permitted, encouraged, tolerated, ratified and knowingly acquiesced to an official pattern, practice or custom of its police officers, . . . violating the constitutional rights of the public at large . . .." [*Id.*] Further, Plaintiff alleges liability against the City under the TGTLA, Tenn. Code Ann. §§ 29-20-101, *et seq.* and violation of the common law of the state of Tennessee.

For the following reasons, all causes of action asserted against the City must be dismissed. Plaintiff's § 1981 is not actionable against a governmental entity and Plaintiff's §§ 1983, 1985 and 1986 claims fail under the *Twombly/Iqbal* standard. In addition, the City is sovereignly immune from civil rights suits under state law, and the TGTLA —which removes sovereign immunity for certain, narrow, prescribed torts— specifically does *not* remove liability for civil rights claims. Tenn. Code Ann. § 29-20-205(2).

## LAW AND ARGUMENT

### I.   FED. R. CIV. P. 12(B)(6) STANDARD

When considering a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a trial court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (internal quotations omitted). The trial court is under no obligation to "accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id.* at 539; *see Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) ("Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.").

In 2007, the United States Supreme Court initiated a substantive overhaul of the motion to dismiss standard. The Court, in *Bell Atlantic Corporation v. Twombly*, abrogated the "*Conley*"

standard, stating that it was "best forgotten." 550 U.S. 544, 563 (2007). The *Twombly* Court explained that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555. Considering *Twombly*, the Sixth Circuit explained:

> Plaintiffs' obligation to provide the grounds of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action. The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief. To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory.

*League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Twombly*, 550 U.S. 544 (2007) (internal citations and quotations omitted).

The Supreme Court followed *Twombly* with *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *Iqbal* undoubtedly continued many of the same rationales espoused in *Twombly*, especially where a plaintiff makes only "formulaic recitations of the elements of a cause of action" and "mere labels and conclusions," as well as when a plaintiff makes only "naked assertions devoid of further factual development." *Iqbal* 556 U.S. at 678. More pointedly, the Court stated that "the pleading standard [Fed. R. Civ. P. 8] announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). The *Iqbal* Court promulgated a two-part test for determining the sufficiency of a plaintiff's pleading. In the first step, a trial court begins by examining the pleadings and identifying allegations and claims that are nothing more than conclusions, which are entitled to no assumption

3

of truth. *Id.* at 679. Upon discarding the offending allegations[1], the trial court then considers whether the allegations that are left "plausibly suggest entitlement to relief[2]." *Id.* at 681.

The Sixth Circuit has emphasized that the "combined effect of *Twombly* and *Iqbal* [is to] require [a] plaintiff to have a greater knowledge . . . of factual details in order to draft a 'plausible complaint.'" *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (citation omitted). Stated another way, complaints must contain "plausible statements as to when, where, in what or by whom." *Center for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011).

### PLAINTIFF'S MUNICIPAL LIABILITY CLAIM MUST BE DISMISSED

#### (A)   PLAINTIFF'S § 1981 CLAIMS AGAINST THE CITY ARE NOT VIABLE

In *Jett v. Dallas Independent School District*, 491 U.S. 701 (1981) the United States Supreme Court found that § 1981 did not create a private cause of action against municipalities.. *See also Arendale v. City of Memphis*, 519 F.3d 587, 594 (6th Cir. 2008) (citing *Jett*, 491 U.S. at 732) ("§ 1981's implicit cause of action does not extend to suits brought against state actors."). *See Onyeanusi v. District of Columbia*, 69 F. Supp. 3d 106, 107 (D.D.C. 2014) (dismissing the plaintiff's § 1981 claim against the district based on the "virtually unanimous" holding of the federal courts that § 1983, not § 1981, is the proper vehicle for alleging civil rights violations by state actors); *Olatunji v. District of Columbia*, 958 F. Supp. 2d 27, 34 (D.D.C. 2013) ("hold[ing] that [the] plaintiff cannot maintain an independent cause of action under § 1981 against the District of Columbia").

---

[1] Indeed, the *Iqbal* Court characterizes such allegations as being "rejected." *Id.* at 681.
[2] "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but it has not show[n]— that the pleader is entitled to relief." *Id.* at 680 (internal citations omitted) (internal quotations omitted).

4

### (B) PLAINTIFF'S § 1983 CLAIMS FAIL THE TWOMBLY/IQBAL TEST

Through § 1983, Plaintiff seeks to assert a cause of action for municipal (*i.e.*, *Monell*) liability against the City, purportedly arising out of the City's deliberate indifference to Plaintiff's constitutional rights. The path towards municipal liability is well developed, and narrow.[3]

Though rare, municipalities can be subject to § 1983 actions for alleged constitutional violations committed by municipal employees, *see Monell v. Department of Social Services*, 436 U.S. 658 (1978), albeit in a narrow set of circumstances; however, "[a] municipality may not be held liable under § 1983 on a *respondeat superior* theory – in other words, 'solely because it employs a tortfeasor.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 388-89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691 (emphasis in original)); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (same). Rather, Plaintiff here must show that, "through its deliberate conduct, [the City] was the 'moving force' behind the injury alleged." *Allman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). In so doing, Plaintiff bears the burden of demonstrating that The City had a "policy or custom" that caused a violation of his constitutional rights. *Monell*, 436 U.S. at 694.

A policy[4], for the purposes of *Monell* liability, may be shown by: "(1) the existence of an illegal official policy or legislative enactment; (2) . . . an official with final decision making

---

[4] On the one hand, a policy typically suggests "a policy statement, ordinance, regulation, or decision officially adopted and promulgated . . . ." *Johnson v. Hardin Cnty.*, 908 F.2d 1280, 1285 (6th Cir. 1990). On the other hand, a custom "has not received formal approval through . . . official decision-making channels." *Id.* But "[b]efore a custom can be the basis for a civil rights violation, the custom must be 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 1004 (6th Cir. 1994) (quoting *Feliciano v. Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993). In *Bass v. Shelby Cty. Tennessee*, Chief Judge Anderson recited that "[a] custom for purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of law must include deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a custom is a

authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Here, Plaintiff proceeds on theories sounding in the alleged existence of a policy of inadequate training, and the existence of a custom of tolerance of the sort of constitutional violations alleged here.[5]

Plaintiff's *Monell* allegations are nothing more than the formulaic recitations that are proscribed by *Twombly* and *Iqbal*. Indeed, the Sixth Circuit has routinely found that conclusory, speculative allegations are insufficient to state a plausible claim for relief against a municipality. *See, e.g., Brent v. Wayne Cnty. Dep't of Human Services*, 901 F.3d 656, 698 (6th Cir. 2018); *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016). Indeed, in large part, Plaintiff's allegations simply consist of familiar legal principles, and language from paradigmatic cases, repackaged as factual allegations.

"To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Jones v. Clark Cty., Kentucky*, 959 F.3d 748, 761–62 (6th Cir. 2020) (abrogated on other grounds) (quoting *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006)).

---

legal institution not memorialized by written law." No. 07-2142-STA, 2010 WL 11597167, at *5 (W.D. Tenn. Jan. 4, 2010) (internal citations and quotations omitted).

[5] To the extent the Court discerns that Plaintiff's allegations fall more properly under one of the other theories, Plaintiff's Complaint is nonetheless insufficient to state a plausible claim as to those theories as well – and for the same reasons, including the failure to satisfy the pleading standards applicable.

Instead of real, concrete facts, Plaintiff relies most heavily on a sensationalized version of events, laden with adjectives, adverbs, and other descriptors that add no value. For instance, in asserting municipal liability under the familiar "failure to train" theory, Plaintiff's factual support consists of almost nothing in the allegations directed to the City. In Paragraph 119, Plaintiff recites the standard trope that "the City of Memphis is under a constitutional duty to properly hire, provide policy guidance, train, supervise, retain and discipline the members of the Memphis Police Department . . . . preserving to the citizens . . . . the rights, privileges and immunities guaranteed to them by the Constitution[] of the United States of America. . .." In Paragraph 122 —subparts (a) and (h)— Plaintiff uses the words "adequately train and supervise" – referring to the County's failure to undertake same. (*Id.* at PageID # 16-17). That is the totality of Plaintiff's failure to train (or supervise) theory.[6] This is clearly insufficient.

Plaintiff's "custom of tolerance" theory, to the extent made, is equally porous. Besides only making the conclusion that such customs (or as Plaintiff describes them, "de facto" policies) exist, Plaintiff offers no facts in support. To carry his burden to sufficiently plead the existence of a custom of tolerance, Plaintiff must show "a custom that is 'so widespread, permanent, and well settled as to have the force of law." *Wallace v. Coffee Cty., Tennessee*, 852 F. App'x 871, 876 (6th Cir. 2021) (internal quotations omitted). Here, this would require showing a deeply embedded custom of allowing CDs to use excessive force (or any of the other laundry list of items Plaintiff sprinkles throughout the Complaint). *See Id.*; *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (a plaintiff must show, among other things, a "clear and persistent pattern of illegal activity" and "the defendant's tacit approval of the unconstitutional conduct."). Every element is missing here.

---

[6] To be sure, Plaintiff uses a couple of buzzwords sounding in failure to train later in the Complaint in attempting to make out claims against the Sheriff and the Chief, but nothing more.

7

Problematically though, this evidences the same sort of overbroad, high level, conclusory type of statement that has been disaproved. Furthermore, Plaintiff fails to tie these complaints to the incident in question. There is no attempt to show that the Officers have any other complaints or on what topics the City of Memphis failed to train these officers on. an the fact that they exist. Beyond stating that there were complaints, Plaintiff offers nothing else.

Indeed, this very Court has addressed a similar circumstance —both procedurally and substantively— in *Sanders v. City of Memphis, Tennessee* (cited *supra*), wherein the plaintiff asserted *Monell* claims sounding in precisely the same theories, made similar "factual" allegations, and failed to state a plausible claim upon which relief can be granted. No. 221CV02585MSNCGC, 2022 WL 4665867, at *1 (W.D. Tenn. Sept. 30, 2022).[7] The Court there appeared to analyze and address precisely the same issues as presented here (*i.e.*, the GTLA and *Monell* claims). For the reasons stated herein, as well as those addressed in *Sanders*, Plaintiff has failed to state a plausible claim for municipal liability upon which relief can be granted, and such claim(s) should be dismissed.

### (C) §§ 1985 AND 1986 CLAIMS AGAINST THE CITY ALSO FAIL

Claims under §§ 1985 and 1986 are derivative of Plaintiff's § 1983 claim. Because Plaintiff's § 1983 claim fails, so does his §§1985 and 1986 claims. Moreover, they also fail the Twombly/Iqbal test. Accordingly, they should be dismissed.

---

[7] There, as here, the plaintiff made a list —11 purported "customs" in all in that case— which allegedly supported his *Monell* claims. (*See* D.E. 1 at PageID #16, ¶ 60(a)-(j)) (Plaintiff listing all of her alleged "policies, customs, and practices."). Likewise, in *Sanders* as here, the plaintiff supported his municipal liability claim by alleging prior suits against the City for similar conduct – which this Court found "insufficient to lead 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sanders*, 2022 WL 4665867, at *5 (quoting *Iqbal*, 556 U.S. at 678).

8

# PLAINTIFF'S STATE LAW CAUSES OF ACTION AGAINST THE CITY MUST BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6)

Though clearly an action pursuant to 42 U.S.C. § 1983, Plaintiff attempts to bootstrap in a state law (or, "pendant") causes of action under the GTLA.

### A.     Plaintiff's State Law Claim(s) Cannot be Maintained in a § 1983 Action

Plaintiff's GTLA claim is premised upon the same alleged facts as his § 1983 claims.

Tennessee —including its governmental subdivisions— are insulated from suit by sovereign immunity at common law. *See Lucius v. City of Memphis*, 925 S.W.2d 522, 525 (Tenn. 1996) (immunity in place except upon waiver); *Cruse v. City of Columbia*, 922 S.W.2d 492, 495 (Tenn. 1996) (tracing sovereign immunity to "feudal England"). That common law principle is enshrined in the Tennessee constitution. *See* Tenn. Const. art. I, § 17 (providing that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct."). In 1973, while reaffirming the broad application of sovereign immunity, the General Assembly removed the shield of immunity for a few select, defined bases. *See* Tenn. Code Ann. § 29–20–201 to 205 (immunity removed for, *inter alia*, negligent operation of a motor vehicle and dangerous or unsafe roadways or sidewalks); *Young v. City of LaFollette*, 479 S.W.3d 785, 790 (Tenn. 2015) (summarizing same). Because the GTLA's waiver of sovereign immunity is clearly in derogation to common law, it must be strictly construed and applied by the courts. *Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 83 (Tenn. 2001).

Though the GTLA removed immunity in very specific instances, it also specifically exempted certain conduct or causes of action from the abrogation of immunity, including: "False imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or **civil rights**. . .." Tenn. Code Ann. § 29-20-205

9

(subsections shortened). Section 205's list of exemptions has been refined, extensively litigated, and well-developed since 1973.

Thus, The City is immune from suit on civil rights claims. It is well settled that the term "civil rights," as used in the GTLA, means those rights arising under the United States constitution. *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010); *Campbell v. Anderson Cnty.*, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010). The district courts of the Western District of Tennessee concur and have dismissed GTLA claims on this same basis many times before. *See Tinkle v. Dyer Cnty., Tennessee*, No. 18-01124-STA-EGB, 2018 WL 6840155, at *2 (W.D. Tenn. Dec. 31, 2018) (Chief Judge Anderson dismissing GTLA claims which were just § 1983 claims repackaged as claims of negligence); *Hargrow v. Shelby Cnty., Tenn.*, No. 13-2770, 2014 WL 3891811, at *5 (W.D. Tenn. Aug. 7, 2014) (Judge Mays rejecting the plaintiff's argument that she had made alternative claims sounding in civil rights and negligence and, thus, the GTLA did not bar her state law claims because she had stated "no facts in the Complaint for tort violations other than those underlying her § 1983 claims"); *Murphy v. Shelby Cnty., Tenn.*, No. 2:13-CV-02355-JPM, 2013 WL 3972652, at *4-5 (W.D. Tenn. July 31, 2013) (Judge McCalla dismissing state law claims brought concomitantly in § 1983 action on the basis that The City is sovereignly immune); *Rowland v. City of Memphis, Tenn.*, No. 2:13-CV-02040-JPM, 2013 WL 2147457, at *9 (W.D. Tenn. May 15, 2013) (same)[8]; *see also Partee v. City of Memphis, Tenn.*, 449 F. App'x 444, 448 (6th Cir. 2011) (dismissing state law claims as sovereign immunity for the City of Memphis was

---

[8] Judge McCalla reached the same conclusion again recently in *Gomez v. City of Memphis, Tennessee*, No. 219CV02412JPMTMP, 2021 WL 1647923, at *18 (W.D. Tenn. Apr. 27, 2021).

10

not removed where facts giving rise to state law claims were the same as those underlying civil rights claims).[9]

Though the foregoing decisions are obviously useful —if not dispositive— this Court recently addressed precisely the same issue, carefully weighed the law, and reached the same conclusion. In *Sanders v. City of Memphis, Tennessee*, a plaintiff sued the City of Memphis (really, MPD), as well as several officers, under § 1983 for purported violations of his Fourth Amendment rights regarding his 2021 arrest after riding his ATV down a public street. No. 221CV02585MSNCGC, 2022 WL 4665867, at *1 (W.D. Tenn. Sept. 30, 2022). The City, as The City does here, moved to dismiss the plaintiff's state law claims as they were merely civil rights claims repackaged, and the Court granted the motion. *See Id.* at *9 (also holding that the discretionary function exception triggered immunity).

Even if the Court is not convinced that Plaintiff's GTLA claim is prohibited here, the Court should abstain from taking up the matter in any event. Though 28 U.S.C. § 1367 provides the framework under which courts may exercise supplemental jurisdiction over certain state law claims, it also provides the framework for declining to do so. In evaluating a lower court's decision to decline supplemental jurisdiction, the Sixth Circuit held that:

> Title 28 U.S.C. § 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over a claim "... if ... in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).
>
> The [GTLA] provides in pertinent part: "[t]he circuit courts shall have exclusive original jurisdiction over any action brought under this chapter...." Tenn. Code Ann. § 29–20–307.
>
> In this instance, the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction.

---

[9] *Savage v. City of Memphis*, 620 F. App'x 425, 429–30 (6th Cir. 2015) ("[The] alleged negligence arises out of the same circumstances giving rise to Plaintiffs' civil-rights claim. The district court thus correctly concluded that the City retains its immunity from Plaintiffs' negligence claims.").

11

*Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000) (affirming trial court).

Even if the GTLA claim survives, Plaintiff has nonetheless failed to state a claim. Aside from the civil rights exception, the GTLA likewise contains a discretionary function exception, and prohibits the application of *respondeat superior*. *See* Tenn. Code Ann. § 29-20-205. The County is sovereignly immune from suit here on that basis as well. The City's choices in hiring, firing, training, and supervising are discretionary functions. *See Peatross v. City of Memphis*, No. 2:14-CV-2343-SHL-CGC, 2015 WL 13021901, at *8 (W.D. Tenn. Mar. 12, 2015), *aff'd*, 818 F.3d 233 (6th Cir. 2016).

## PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES AGAINST THE CITY

Gray's claim for punitive damages against the City must be dismissed. While a plaintiff may recover punitive damages from a person sued in his or her individual capacity, a plaintiff cannot recover punitive damages from a city. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Therefore, Tigner is not entitled to recover punitive damages from the City. Accordingly, Gray's punitive damage claim against the City must be dismissed.

## CONCLUSION

For the reasons stated herein, all of Plaintiff's claims asserted against The City should be dismissed. The City moves the Court to dismiss both the state law and federal claims with prejudice.

       Respectfully submitted,

       **GLANKLER BROWN, PLLC**

    By: /s/Robert D. Meyers
       Robert D. Meyers (TN # 12187)
       6000 Poplar Avenue, Suite 400
       Memphis, Tennessee 38119
       Telephone: (901) 576-1731
       Facsimile: (901) 525-2389
       rmeyers@glankler.com
       *Attorney for City of Memphis*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of January 2025, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

Howard Manis
The Cochran Firm
40 South Main St., Suite 1700
Memphis, TN 38103
(901) 843-3476
hmanis@901thefirm.com

Deborah E. Godwin
Mary Elizabeth McKinney
Godwin, Morris, Laurenzi & Bloomfield, P.C.
50 North Front Street, Suite 800
Memphis, TN 38103
(901) 528-1702
dgodwin@gmlblaw.com
bmckinney@gmlblaw.com

Dennis P. Hawkins
City of Memphis
125 North Main Street, Room 336
Memphis, TN 38103
(901) 636-6614
dennis.hawkins@memphistn.gov

Joseph M. Fletcher
Fletcher Law Firm
2400 Poplar Ave., Suite 418
Memphis, TN 38112
(901) 452-3482
JosephM.Fletcher@memphistn.gov

/s/Robert D. Meyers
Robert D. Meyers

4922-1156-5586, v. 1